2026 IL App (1st) 250171-U

SIXTH DIVISION

March 27, 2026

No. 1-25-0171

**NOTICE**:  This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | |
|---|---|
| CANDI JEPPESEN, as Administrator of the estate of Eric Jeppesen, deceased, | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | |
| v. | |
| | No. 22 L 861 |
| FCL BUILDERS, LLC, | |
| | Honorable |
| Defendant-Appellant. | Patrick J. Sherlock, Judge, presiding. |
| FCL BUILDERS, LLC | |
| Third-Party Plaintiff-Appellant | |
| v. | |
| INDUSTRIAL CORK COMPANY, INC. | |
| Third-Party Defendant-Appellee | |

PRESIDING JUSTICE C.A. WALKER delivered the judgment of the court.
Justices Hyman and Gamrath concurred in the judgment.

**ORDER**

¶ 1   *Held:*   We dismiss the appeal because appellant's claim is moot.

¶ 2   In the wrongful death suit giving rise to this appeal, plaintiff-appellee Candi Jeppesen (as administrator of the estate of her deceased husband, Eric Jeppesen) sued defendant-appellant FCL Builders, LLC (FCL), following a workplace accident that led to Eric's death. FCL filed a third-party complaint against appellee Industrial Cork Company, Inc. (Cork), Eric's employer, seeking contribution per section 2 of the Illinois Joint Tortfeasor Contribution Act (the Act) (740 ILCS 100/2 (West 2022)). The third-party suit also involved claims for breach of an alleged subcontract between Cork and FCL. Alongside her suit against FCL, Candi maintained a worker's compensation case against Cork, which Cork and Candi ultimately agreed to settle. Following that settlement, Cork moved for a good faith finding under section 2(c) of the Act (740 ILCS 100/2(c) (West 2022)), along with a corresponding request to dismiss FCL's contribution claim per the Act. The circuit court granted the motion and dismissed FCL's contribution claim against Cork accordingly, prompting this appeal. For the reasons below, the appeal is dismissed.

¶ 3                                    BACKGROUND

¶ 4   Candi, as special administrator of Eric's estate, filed the opening complaint in this matter on January 27, 2022, naming FCL as the lone defendant. Therein, she raised claims of wrongful death, alleging that FCL was "in charge" of a construction project on the 3400 block of East 118th Street in Chicago, on which FCL contracted with Cork, Eric's employer, for certain work on the project. Candi alleged that Eric "fell to his death" on January 7, 2022, while working for Cork on the FCL project. She further alleged the fall was the "direct and proximate result" of one or more

of a list of eleven alleged negligent acts by FCL, including failing to "provide adequate fall protection" and the failure to provide adequate warnings and training. Candi amended the complaint on April 18, 2022. While pursuing her claims against FCL, Candi also maintained a worker's compensation case against Cork.

¶ 5    On May 23, 2022, FCL filed a third-party complaint against Cork, raising a contribution claim. In support, FCL alleged that Eric was at all relevant times "under the direction, supervision, and control of Cork." By virtue of this, Cork owed a duty of care to Eric, but breached that duty by acting negligently in eight distinct ways, including by creating a dangerous condition and failing to adequately train, warn, or supervise. These actions entitled FCL "to contribution from Cork in an amount commensurate with its degree of fault."

¶ 6    FCL filed an amended third-party complaint on October 31, 2022, adding claims II and III for breach of an alleged subcontract between FCL and Cork.

¶ 7    During the ensuing litigation, Cork moved to dismiss claims II and III on multiple occasions, which the circuit court granted, allowing FCL to file amended complaints each time. In these motions, Cork maintained that no valid subcontract existed between FCL and Cork. Ultimately, on September 26, 2024, after Cork moved to dismiss counts II and III in FCL's third amended third-party complaint, the court ordered that FCL's contract claims (and the issue of whether a contract existed) be mediated. FCL's contribution claim remained pending.

¶ 8    On November 12, 2024, Cork moved for a good faith finding and dismissal of FCL's contribution claim, relaying that Cork and Candi had reached a settlement in the worker's compensation action. The terms of the settlement were "a lump sum" of $1 million and a waiver of Cork's workers' compensation lien (purportedly over $200,000). This constituted "adequate consideration" to satisfy the Act, which, Cork argued, meant the circuit court should find the

settlement in good faith and then dismiss FCL's contribution claim as barred by the Act. See 740 ILCS 100/2(c) (West 2022).

¶ 9 The circuit court granted Cork's motion on November 14, 2024. During argument on the motion, FCL's attorney objected and asked for a briefing schedule. The court responded, "I don't think we need briefing on this." Cork's attorney stated that the settlement was "in furtherance of" the Act's goals of "equitable apportionment" and "encouragement of settlements." FCL's counsel responded that it had its "own separate claims against" Cork that went "well beyond" the Act. The court concluded, "I have reviewed the arguments of counsel and the motion for good-faith finding. The Court finds that the settlement was made in good faith and will grant the motion." FCL's attorney also relayed during the hearing that FCL had reached a settlement agreement with Candi.

¶ 10 FCL moved for reconsideration on December 13, 2024, arguing that the circuit court had misapplied the law. In support, it contended Cork's settlement did not sufficiently apportion damages based on FCL's and Cork's relative culpability, in part because the alleged subcontract included a waiver of Cork's liability cap under *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155 (1991). FCL repeated the allegations in its third-party complaint that Cork was "responsible for Eric's actions and safety on the job site." Finally, it described the facts of the case as "Eric somehow went off the interstitial ceiling ledge while working within the scope of his employment with Cork." In light of this, FCL argued, it was not equitable that Cork paid only $1 million in its settlement, while FCL paid the much larger sum of $6.5 million.

¶ 11 On January 2, 2025, the circuit court denied the motion to reconsider "for the reasons stated on the record." No transcript of this hearing appears in the record on appeal. FCL filed their notice of appeal on January 31, 2025.

¶ 12    On February 14, 2025, Candi filed a petition to approve settlement, relaying that she had reached settlement agreements with both FCL and Cork, both of which she attached to the petition. The FCL settlement stated, in relevant part, that Candi understood and agreed that by signing the document "she forever releases FCL Builders, LLC and Amerisure Mutual Insurance Company" for the January 7, 2022 incident, but that the agreement was not to be construed as "releasing or discharging FCL Builders, LLC and Amerisure Mutual Insurance Company's claims against Industrial Cork Company, LLC and its Insurers to recover the settlement sum and/or other amounts." The agreement also stated that Candi "separately settled" with Cork. The circuit court granted the petition on March 5, 2025.

¶ 13                                JURISDICTION

¶ 14    The circuit court denied FCL's motion to reconsider on January 2, 2025, and FCL filed its notice of appeal on January 31, 2025, giving this court jurisdiction pursuant to article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017).

¶ 15                                 ANALYSIS

¶ 16    FCL's lone claim on appeal is that the circuit court erred by granting Cork's motion for a good faith finding and dismissing their contribution claim accordingly. During the pendency of this appeal, Cork filed a motion to dismiss that was taken with the case. We first consider that motion before turning to FCL's claim.

¶ 17    Cork's motion to dismiss maintains that because FCL failed to extinguish Cork's liability in FCL's settlement agreement with Candi, it is barred from seeking contribution from Cork per section 2(e) of the Act. 740 ILCS 100/2(e) (West 2022). Because FCL is so barred, Cork contends, any argument regarding the good faith of Cork's settlement is rendered moot because FCL could

not pursue contribution even if the circuit court were to agree that Cork's settlement was not in good faith.

¶ 18    "An issue is moot if no actual controversy exists or where events occur which make it impossible for the court to grant effectual relief." *Dixon v. Chicago and North Western Transportation Co.*, 151 Ill. 2d 108, 116 (1992). Generally, Illinois courts will not resolve moot issues. *Id.*

¶ 19    The relevant portion of the Act reads, "A tortfeasor who settles with a claimant pursuant to paragraph (c) is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement." 740 ILCS 100/2(e) (West 2022). The Illinois Supreme Court has explained that this means, "A party that settles may seek contribution only from parties whose liability was extinguished by the same settlement." *Dixon*, 151 Ill. 2d at 116 (citing *Pearson Brothers Co. v. Allen*, 131 Ill. App. 3d 699, 701-02 (1985)).

¶ 20    The record shows, and the parties do not dispute, that FCL's settlement agreement with Candi did not extinguish Cork's liability, as both Cork and FCL reached separate agreements with Candi.

¶ 21    We therefore are compelled to find that FCL's contribution claim is moot, and grant Cork's motion to dismiss. To paraphrase the Illinois Supreme Court in *Dixon*, "It is clear that [FCL's] settlement with [Candi] has made the dismissal of its contribution counterclaim a moot issue," because the Act bars FCL from seeking contribution from Cork, meaning that if this court reached the merits of FCL's claim and found in favor of FCL, "upon remand the contribution claim would simply be dismissed pursuant to section 2(e)." *Dixon*, 151 Ill. 2d at 117. The Act lists no exception to section 2(e), and FCL does not cite any authority that identifies such an exception. Given the directives obvious on the face of the Act, and confirmed as such in *Dixon*, we can only presume

the legislature balanced the twin goals of the Act in arriving at the language for section 2(e), apply the statute as written, and grant Cork's motion. See *People v. Wells*, 2023 IL 127169, ¶ 31 ("In interpreting a statute, we may not add words or fill in perceived omissions. It is the judiciary's role to enforce clear, unambiguous statutes as written, not to question the wisdom of the legislature.").

¶ 22    FCL's primary argument is that this result is unfair, citing *Bowers v. Murphy & Miller, Inc.*, 272 Ill. App. 3d 606, 608 (1995). This type of general unfairness argument has been rejected previously by this court in *Guerrero v. Sebastian Contracting Corp.*, 321 Ill. App. 3d 32, 38-39 (2001). In *Guerrero*, the court adopted the stance of the *Pearson* court, who wrote, "We do not choose to torture the language of section 2(e) to permit the seeking of contribution here even though it might seem fair to do so. To disregard the limitation of section 2(e) each time it might seem fair to do so would cause intolerable confusion." As also noted by the *Guerrero* court, the Illinois Supreme Court in *Dixon* cited *Pearson's* approach favorably. *Id.* at 38.

¶ 23    In response, FCL maintains that *Dixon* is distinguishable due to the below passage in which the *Dixon* court attempted to summarize a thinly presented argument:

> "North Western essentially provides no argument as to why section 2(e) would not apply here, except to say that applying it ignores the 'dilemma' North Western was put in by the dismissal of its contribution counterclaim. We assume that North Western is arguing that it would be unfair to apply section 2(e) to it because, as the sole "deep-pocket" defendant left to go to trial, it was 'forced' to settle with Dixon. This argument has no substance, however, because *** North Western ultimately settled for *** a figure very close to its previous offer. Thus, it cannot rightly be said that North Western was 'forced' to settle by the Jeep settlement." *Dixon*, 151 Ill. 2d at 117.

7

¶ 24    We reject the argument that the *Dixon* court intended this passage to permit blanket avoidance of section 2(e) on general "fairness" grounds, or purported to create a broad fairness exception to section 2(e) without explaining anything about when the exception is appropriate or how it should be applied. The passage simply attempts to identify what North Western may have been arguing, and then rejects the idea that such an argument would even have a basis in the record—stopping far short of endorsing a fairness exception as legally viable. Furthermore, even if we were to consider the merits of a fairness argument, FCL failed to create any kind of record to support its general allegation that the $6.5 million it paid was disproportionate or unfair when compared with the $1 million Cork paid. The only information FCL provides are the bare allegations of the complaint, allegations which Cork denied (including any duties Cork undertook as part of the alleged subcontract). There are no affidavits, depositions, or documentation of any type from which we could conclude FCL has demonstrated what a fair liability apportionment would be in this case.

¶ 25    In another attempt to distinguish *Dixon*, FCL points to the fact that its breach of contract claims remain pending, whereas there were no other outstanding claims in *Dixon*. This, FCL contends, made it infeasible for FCL to extinguish Cork's liability in its settlement. We disagree because FCL had a choice to extinguish Cork's liability in its agreement with Candi and maintain its contribution claim or not involve Cork in the settlement and thereby forego the contribution claim while continuing to pursue the breach of contract claims. It chose to not involve Cork in the settlement and to forego the contribution claim. Whether FCL can viably pursue damages via breach of contract claims is not at issue before this court.

¶ 26    FCL next argues that there are exceptions to the mootness doctrine that would permit this court to reach the merits of its claim on appeal. *Id.* at 117-18. But even if we agreed that this

situation presented an exception to the mootness doctrine, which we do not, this argument still would not permit FCL to recover in contribution against Cork such that its claim could survive dismissal. If we were to reach the merits, then determine that the circuit court erred in finding Cork's settlement with Candi in good faith, the Act would *still bar* FCL's claim for contribution against Cork. The only effect of our reaching the issue would be application for future cases, but FCL does not seek this, nor is there any indication the circumstances are appropriate for relaxation of the mootness doctrine. *Id.*

¶ 27     Finally, FCL's citation to *Solimini v. Thomas*, 293 Ill. App. 3d 430 (1997), does not support its position. There, Solimini procured a jury verdict against co-defendants Thomas and Topsoil. *Id.* at 432. The total amount of damages was $2,450,000.75, with 30% apportioned to Thomas and 70% apportioned to Topsoil. *Id.* Both Thomas and Topsoil later settled with Solimini in separate agreements, and Topsoil pursued a contribution claim against Thomas. *Id.* at 432-33. Crucially, the Topsoil agreement with Solimini included a satisfaction of judgment in which Solimini released the full $2,450,000.75. *Id.* at 433. Due specifically to this fact, the *Solimini* court found that Thomas' liability was extinguished by Solimini's agreement with Topsoil such that Topsoil's contribution action survived section 2(e) of the Act. *Id.* at 436. The court explained, "In this case, the satisfaction of judgment that was part of the Topsoil settlement acted to extinguish Thomas' liability to Solimini even though it did not mention Thomas because it was for the full judgment amount." *Id.* That *Solimini* does not apply in our context is obvious; there was not a collective, overarching final damage award against FCL and Cork which Candi discharged in full by virtue of FCL's settlement agreement.

¶ 28                                    CONCLUSION

¶ 29   FCL's settlement agreement with Candi did not extinguish Cork's liability, and as such, FCL is barred from seeking contribution against Cork, rendering this appeal moot. Accordingly, we grant Cork's motion to dismiss.

¶ 30   Appeal dismissed.